# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MAURICE HAYNES,

    Defendant.

Case No. 14-cr-20083

Hon. Linda V. Parker

| | |
|---|---|
| Nancy A. Abraham (P42060)<br>Assistant United States Attorney<br>600 Church Street, Room 210<br>Flint, Michigan 48502<br>(810) 766-5034<br>Nancy.abraham@usdoj.gov<br>*Attorneys for the United States* | Wade G. Fink (P78751)<br>WADE FINK LAW PC<br>370 E. Maple Rd., Third Floor<br>Birmingham, Michigan 48009<br>(248) 712-1054<br>wade@wadefinklaw.com<br>*Attorneys for Maurice Haynes* |

## HAYNES' REPLY IN SUPPORT OF
## HIS MOTION FOR COMPASSIONATE RELEASE

The government's conduct in this matter is troubling. The briefing timeline is important. On June 19, 2020, Defendant Maurice Haynes filed a motion for compassionate release. ECF No. 19. The government was ordered to respond by June 26, 2020. ECF No. 27. The government's initial position was that it could not immediately concur, but that it would look into the matter. One day before the government's initial response was due, the government sought a one-week extension

to "review information" regarding possible concurrence. Undersigned counsel stipulated. ECF No. 28. Next, on June 29, 2020, undersigned counsel and the government's lawyer discussed the case by telephone. Among other things, the government took the position that the only request for release the BOP could locate from Haynes was one made on June 9, 2020 and for that reason it could not waive the exhaustion requirement because it had not been 30 days. Haynes, in fact, had already exhausted much earlier, but pertinent here is that the government's position was that the 30-day clock would not have fully run until July 9, 2020. The government's lawyer suggestion was that the parties extend the government's response deadline beyond July 9, 2020 in order to "moot" the exhaustion issue. The parties agreed that Haynes could amend or supplement his original motion on July 10, 2020. After that, government counsel would have an additional 10 days (22 days in total) to make a better pitch to superiors regarding concurrence. Based on these representations, undersigned counsel agreed to this timeline by way of stipulation. ECF No. 29. The undersigned also subsequently agreed to a *third* extension after the government asked for more time to work towards a recommendation for concurrence that required approval from the Chief of the Criminal Division. ECF No. 30

After that third extension, communication from the government ceased. Absolutely blindsiding undersigned counsel, at 8 p.m. on a Friday night, the government filed a brief *in opposition*, asserting, among other things, that Haynes

had not exhausted his administrative remedies. The entire purpose of the second extension was to moot this issue and that the government would abandon it as it had done in other cases. *See, eg, United States v. Howard*, Case No. 12-cr-20751, ECF No. 38, PageID.482 ("the government will no longer pursue the exhaustion argument, and will instead focus on the merits of Howard's request for compassionate release").

That is not all. In prior conversations, it was made clear that Haynes was eligible for release in November of this year, a mere four months from now. The government not only omits this from its brief, it argues that he is not eligible for release for over a year, despite knowing full well that is untrue. Knowing Haynes is likely to be released in a matter of months (whether November 2020 or February 2021, either way), the government argues that Haynes failed to present extraordinary and compelling reasons for release and that Haynes is a danger to the public.

The government, in a display unbecoming of the United States' seal, has needlessly prolonged litigation for almost a month just to deceive Haynes and undersigned counsel, then submit the same boilerplate response brief that has been circulating in this district for months.

Haynes will be out of prison very soon and to put him at risk of death in exchange for those few months is not justice. We ask for compassionate release.

# ARGUMENT

**A.  THE BOP HAS NOT "MITIGATED THE RISK FROM COVID-19 WITHIN ITS FACILITIES"**

In its response, the government praises the BOP's efforts to protect inmates in its custody, noting that the BOP has implemented a phased approach to minimize COVID-19's spread across its facilities.

This self-congratulations by the Department of Justice for another entity under its umbrella is not in order. Over 10,000 inmates are confirmed to have contracted the virus despite the BOP's protocols and 103 inmates, so far, have died. Furthermore, COVID-19 has continued to engulf and devastate BOP facilities nationwide despite months' long lockdowns – including FCI Milan, where Haynes is currently housed.

The Sixth Circuit itself heavily criticized the BOP's response, noting that "the 'six-phase' plan is, for practical purposes, a four-phase plan where one phase is taking inventory of supplies and another involves the locking of inmates in 150-person clusters where they cannot access the principal method of COVID-19 prevention." *Wilson v. Williams*, 961 F.3d 829, 848 (6th Cir. 2020). While there are most certainly many heroes within government and the BOP, working tirelessly on behalf of an often forgotten and vulnerable population, the BOP, as an entity, and its leadership, has woefully failed to protect the people in its custody.

### B.  HAYNES HAS SATISFIED THE EXHAUSTION REQUIREMENT

The government's response also contends that Haynes has failed to satisfy the mandatory exhaustion requirement which dictates that an inmate must "fully exhaust [] all administrative rights" or otherwise "wait for 30 days after the warden's receipt of [their] request." *United States v. Alam*, 960 F.3d 831, at *5 (6th Cir. 2020). Haynes has submitted two petitions to Warden Hemingway at FCI Milan, both of which are dated more than 30 days ago. Consequently, this Court has jurisdiction to decide Haynes' motion.

First, Haynes submitted a request for home confinement on April 22, 2020. The government asserts that it has "not been able to verify this allegation." ECF No. 33, PageID.278. However, this is not the first time the government has *incorrectly* suggested that a defendant did not submit a petition just because they were having difficulty obtaining a copy of the document from the BOP. *See Howard*, Case No. 12-cr-20751, ECF No. 38, PageID.482 ("it appears that Howard eventually did, in fact, provide BOP with sufficient information to consider –and ultimately deny– his request for release").

Haynes has made a prima facie showing of exhaustion and the government does not rebut other than to shrug its shoulders. The government's brief fails to rebut or even address Haynes' contention that he satisfied exhaustion on the basis of the first petition to the BOP. Many district courts have declined to hold inmates "to the

5

same semantic precision that it would hold an attorney" and chosen to construe requests for home confinement as compassionate release requests. *United States v. Coker*, No. 3:14-CR-085, 2020 U.S. Dist. LEXIS 66286, at *9 (E.D. Tenn. Apr. 15, 2020).[1] *See also* Deft's Mtn, ECF No. 26, PageID.84-85 (collecting cases).

Regardless, Haynes satisfied the exhaustion requirement, as 30 days have passed since he submitted an additional compassionate release request to Warden Hemingway on June 9, 2020. *See* Govt's Exhibit 1, ECF No. 33-2, PageID.303. Based on the telephone conversation between the parties about mooting the exhaustion issue, the parties stipulated to allow Haynes' to amend or supplement his brief on July 10, 2020. ECF No. 29, PageID.262. Haynes did indeed amend his brief, reiterating that as of July 10, 2020, the 30 day waiting period had run.

Without the government's agreement that Haynes would satisfy the exhaustion requirement come July 10, other options were available, including re-filing or relying on the April 22, 2020 request. Instead, the government induced counsel to take the action he took and Haynes submits the government has waived exhaustion (or is certainly estopped from arguing exhaustion bars relief). The government took an extra month to formulate its response (which is boilerplate, mostly) and now asserts that Haynes has not satisfied exhaustion, contrary to its earlier agreement.

---

[1] All unpublished cases attached as **Exhibit D**.

On its substance, the government argues Haynes' June 9, 2020 petition only referenced "his age and the time he had left to serve on his sentence." ECF No. 33, PageID.290. However, just because Haynes did not use the word COVID-19 in his petition does not mean that he is now moving the Court for relief "on a different ground than the one he raised during the administrative process." *Id.* at PageID.289. Haynes' petition to the BOP and his subsequent motion both discuss his age and upcoming release date as justifications for his compassionate release. In fact, the BOP knew that Haynes' petition, now being disputed by the government, was predicated on COVID-19 as the denial itself states "your concern about being potentially exposed to, or possibly contracting COVID-19, does not currently warrant an early release." *See* Gov't Exhibit 1, ECF No. 33-2, PageID.304.

The government's position demonstrates just how committed the Department of Justice is to keeping inmates incarcerated (except, of course, for friends of the President of the United States), manufacturing anemic arguments based on technicalities to prevent the release of a defendant months away from release. It is indecent and illiberal.

**C.    HAYNES HAS MULTIPLE CDC RECOGNIZED RISK FACTORS**

The government's response also opposes Haynes' compassionate release because his "age and medical condition [] do not satisfy the requirements for release." *Id.* PageID.293. Namely, the government contends that Haynes'

7

reoccurring high blood pressure issues are not severe enough to present extraordinary and compelling reasons for release because he has not yet been prescribed medication for his blood pressure. Similarly, the government notes that although Haynes "has a BMI of over 30, which the CDC has identified as a risk factor for Covid-19 . . . his obesity does not appear to be severe." *Id.* at PageID.294

For starters, the CDC itself recently recognized that an individual's obesity need not be severe to pose a risk for severe illness. A few weeks ago, the CDC issued updated guidance which lowered the specific BMI threshold for those who face increased risk based on weight from a BMI of 40, to a BMI of 30. Consequently, the government's suggestion that Haynes' weight does not heighten his risk of mortality because he is not morbidly obese runs directly contrary to the CDC's own warnings. *See United States v. Seals*, No. 13-00653 SOM 11, 2020 U.S. Dist. LEXIS 114885, at *11-12 (D. Haw. July 1, 2020) (granting compassionate release to an inmate with a BMI of 34.6 and noting that the CDC "does not require [] obesity to be severe to create a higher risk of severe complications of COVID-19.").

The government's suggestion also runs contrary to its own statements, as the government has, on multiple occasions, previously conceded that a BMI over 30 can *by itself* present extraordinary and compelling reasons for an inmate's release – even in one instance where an inmate was housed at a BOP facility with only one confirmed case of COVID-19. *See United States v. Aguayo*, No. 19-cr-02610-BAS-

8

1, 2020 U.S. Dist. LEXIS 121959, at *4 (S.D. Cal. July 10, 2020) ("The Government concedes that Defendant [who only claimed increased risk due to obesity and resides at FCI Sheridan] has shown 'extraordinary and compelling reasons' for the reduction"); *United States v. Shah*, No. 93-cr-180 (LAK), 2020 U.S. Dist. LEXIS 115188, at *3 (S.D.N.Y. June 30, 2020) ("The government concedes that defendant's obesity constitutes an extraordinary and compelling reason[]' warranting his early release").

Additionally, the government contends that Haynes' issues with high blood pressure do not warrant a reduction in sentence because Haynes has not yet been prescribed medication for the reoccurring condition. ECF No. 33, PageID.294. However, as stated in his Motion for Compassionate Release, Haynes has previously had concerning blood pressure readings in late 2019 which caused BOP medical staff to monitor his blood pressure for a month. *See* Deft's Supp Mtn, ECF No. 30, PageID.267. *See also* Govt's Exhibit 3, at 6. Over the course of the month long observation period, Haynes' blood pressure continually increased until he reached stage 2 hypertension. Govt's Ex. 3 at 22.

A review of Haynes' blood pressure reading in February also shows an elevated blood pressure reading of 130/83 – which the America Heart Association

9

classifies as stage 1 hypertension.[2] Govt's Ex. 3 at 45. Consequently, Haynes' blood pressure had *not* returned to a "normal range" in February of this year despite the government's claim to the contrary. ECF No. 33, PageID.294.

Haynes' similarly reports experiencing high blood pressure readings in the month since his initial filing – which the government's response and recent BOP medical records confirm. In fact, only two weeks ago, on July 15, 2020, Haynes blood pressure was approaching hypertensive crisis with a reading of 171/100.[3] Govt's Ex. 3 at 68. Haynes also reported swelling in his legs. *Id.* at 66-67. BOP medical staff once again put Haynes' on a month long monitoring period for his blood pressure and provided him with compression socks. Haynes' was also told that medical staff would consider prescribing a water pill if his symptoms worsened. *Id*. Haynes reports to the undersigned that he was recently informed that he will indeed have to take the water pill for his blood pressure and swelling. Consequently, it is only a matter of when, not if, Haynes will start medication for his dangerously high blood pressure.

---

[2] American Heart Association, *Understanding Blood Pressure Readings*, https://www.heart.org/en/health-topics/high-blood-pressure/understanding-blood-pressure-readings

[3] The American Heart Association notes that a systolic blood pressure higher than 180 and a diastolic blood pressure higher than 120 constitutes hypertensive crisis. *See supra* note 1.

In addition to his respiratory issues, Haynes has *at least* two risk factors recognized by the CDC as increasing an individual's risk for severe illness because he suffers from hypertension and obesity. His underlying medical conditions warrant compassionate release. *See United States v. Overton*, No. CR 417-060-10, 2020 U.S. Dist. LEXIS 129414, at *10 (S.D. Ga. July 22, 2020) ("Ultimately, the Government concedes that, in light of COVID-19, Overton's obesity and possibly his hypertension qualify as an 'extraordinary and compelling reason'"); *United States v. Miller*, No. 17-cr-30032, 2020 U.S. Dist. LEXIS 133281, at *5 (C.D. Ill. July 28, 2020) (finding that a hypertensive inmate with a BMI over 30 was "at a higher risk of serious illness or death if he contract[ed] COVID-19" and granting compassionate release). Accordingly, Haynes urges this Court to grant his compassionate release.

### D.  HAYNES WOULD NOT PRESENT A DANGER TO THE PUBLIC UPON RELEASE

Lastly, the government argues that Haynes should not be granted compassionate release because he is a danger to the community. In its response the government asserts that "Haynes has incurred significant misconducts while incarcerated." ECF No. 33, PageID.297. However, based on the records provided to the undersigned by the government, the only disciplinary violation Haynes has incurred during his six years of incarceration was for having an untidy cell in 2016. **Exhibit A**, BOP Progress Report; **Exhibit B**, Inmate Discipline Data. Furthermore,

the government has tried to mislead the Court by minimizing just how little time remains on Howard's sentence by citing the "percentage of full term served," which is a measurement that does not include good conduct time. Rather, the BOP calculates that Haynes has served 74.6% of his statutory term. According to the government, his home eligibility date is the default period of 6 months from release date. Haynes was notified of his earlier half way house date by his case manager Mr. Jason LeVasseur. However, Mr. LeVassuer did not return the undersigned's communications (including e-mail) attempting to confirm Haynes' halfway house date. **Exhibit B**, Email to J LeVassuer. In fact, Haynes was told by his unit manager that such information would not be given to undersigned and that if the government wanted to obtain the information, they could. The government has access to this information and did not provide it. That is unconscionable.

Regardless of whether Haynes' halfway house date is in November or February of 2020, it is months. The reality is that Haynes will be released from the BOP soon. The risk of Haynes suffocating to death in prison from COVID-19 outweighs any "benefit" to be purportedly gained from spending a few additional months in prison. *Wilson v. Williams*, No. 4:20-cv-00794, 2020 U.S. Dist. LEXIS 70674, at *23 (N.D. Ohio Apr. 22, 2020) ("[the government] might as well be arguing against the release of any inmate, at any time, for any reason, because even

in the best of circumstances the country's criminal justice system has no way, short of life imprisonment, of ensuring former prisoners do not recidivate").

Haynes respectfully moves this Court to grant his compassionate release.

Respectfully Submitted,

Date: July 30, 2020                                    WADE FINK LAW P.C.

<u>/s/ Wade G. Fink</u>
Wade G. Fink (P78751)
*Attorneys for Maurice Haynes*
370 E. Maple Rd., Third Floor
Birmingham, MI 48009
wade@wadefinklaw.com

---

**PROOF OF SERVICE**

I hereby certify that on July 30, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record.

<u>/s/ Wade G. Fink</u>
Wade G. Fink (P78751)
*Attorneys for Maurice Haynes*
370 E. Maple Rd., Third Floor
Birmingham, MI 48009
248-712-1054
wade@wadefinklaw.com